```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


CRAIG B. SCHNEIDER                              CIVIL ACTION

VERSUS                                          NO.: 12-342

GULF INDUSTRIES, INC.                           SECTION "B"(1)
```

### ORDER AND REASONS

Before the Court is Defendant Gulf Industries, Inc.'s ("Gulf Industries") Motion for Summary Judgment. (Rec. Doc. No. 35). In response, Plaintiff filed a Response Memorandum in Opposition to Defendant's Motion for Summary Judgment.(Rec. Doc. No. 77). Defendant filed a reply thereto. (Rec. Doc. No. 85).

Accordingly, and for the reasons pronounced below, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 35) **is hereby GRANTED.**

Cause of Action and Facts of the Case:

This dispute arises out of the alleged termination of Plaintiff Craig Schneider on May 24, 2011. Plaintiff alleges that he was terminated in violation of the Age Discrimination in Employment Act. (Rec. Doc. No. 77 at 3). Defendant Gulf Industries claims that Plaintiff was not terminated - rather, he voluntarily resigned. Consequently, Defendant argues that Plaintiff has no

1

cognizable claim under the ADEA.(Rec. Doc. No. 35 at 2).

Gulf Industries is in the business of providing roadway safety products such as stripping in territories including Louisiana, Mississippi, Florida, Tennessee, Arkansas, Oklahoma, and Texas. (Rec. Doc. No. 77 at 1). Plaintiff Schneider served as the Chief Executive Officer of Gulf Industries from around October/November 2007 through May 2011. (Rec. Doc. No. 35-2 at 1; Rec. Doc. No. 77 at 1). In March 2011, Douglas Brooks invested $3.5 million in Gulf Industries and purchased a majority interest of the stock. (Rec. Doc. No. 35-1 at 1). At that time, the Board of Directors, which included the Plaintiff, unanimously elected Mr. Brooks as the new CEO. (Id. at 2, 4). The Board, again including the Plaintiff, further voted to make Plaintiff the CFO of the company. (Rec. Doc. No. 35-3 at 11).

Plaintiff contends that he felt he was not being given assignments in his position as CFO and that he spoke to Clayton Sims, a consultant for Gulf Industries, about his desire to be given more work. (Rec. Doc. No. 35-3 at 13). Schneider contends that he was advised by Mr. Sims to write an email to Mr.Brooks regarding his concerns. (Rec. Doc. No. 35-3 at 14). Plaintiff stated that his goal in writing an email to Mr. Brooks was to set up a meeting to discuss his concerns. (Rec. Doc. No. 35-3 at 15). On May 24, 2011, the Plaintiff sent an email to Mr. Brooks stating the following: "I am writing to inform you of my willingness to

resign from Gulf Industries. It has become apparent that you do not view me as part of the company's future...This resignation would include resigning as a Trustee and Board member also. My resignation is contingent upon a reasonable separation package...I am thankful to Gulf Industries for the opportunities I have been afforded." (Rec. Doc. No. 35-7 at 5; Rec. Doc. No. 77-5, at 4). In response to this email, Mr. Brooks emailed the Plaintiff writing "I did talk to Clayton today and he will contact you to discuss your resignation. I wish you good luck for the future." (Rec. Doc. No. 35-7 at 1). Defendant contends that this constituted an acceptance of Plaintiff's resignation. (Rec. Doc. No. 35-1 at 9). Plaintiff later stated he was advised by Clayton Sims to send a conditional letter of resignation. (Rec. Doc. No. 77-5, at 7). Plaintiff further contends that he did not intend to resign and that Sims had assured him that he (Mr. Sims) would discuss his situation with Brooks and set up a meeting so that Schneider's position and function at the company could be discussed. (Rec. Doc. No. 77-5 at 7). On June 1, 2011, Plaintiff was sent a formal letter from Doug Brooks accepting the alleged resignation. (Rec. Doc. No. 35-7 at 6). Plaintiff then initiated this suit in federal court against Gulf Industries alleged age discrimination under the ADEA.(Rec. Doc. No. 1).

**Law and Analysis**

3

A. Motion for Summary Judgment

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

B. Constructive Discharge

Under the Age Discrimination in Employment Act (ADEA), it is unlawful for an employer to "discharge any individual or otherwise

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In order to assert a claim under the ADEA, the plaintiff must establish a *prima facie* case of discrimination. *Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000). To establish a *prima facie* case, the plaintiff must prove: (1) that he is a member of a protected class, (2) that he was qualified for the position he held, (3) that he was discharged, and (4) that he was replaced by someone younger. *Id.* In the case at bar, the only contested issue is whether the plaintiff was discharged such that his claims fall within the province of the ADEA.[1]

In the case at bar, Plaintiff did send Gulf Industries' CEO Doug Brooks an email stating that he was willing to resign and giving some terms for resignation. (Rec. Doc. No. 35-7 at 5). Plaintiff now contends that it was not his intention to resign - rather he hoped to initiate a conversation. The email Schneider sent to Doug Brooks, however, does not evince this intent and Plaintiff does not present case law to support his contention that

---

[1] Defendant claims that the plaintiff was not replaced by someone younger. However, the facts establish that Monica Hodges, who was younger that the plaintiff, took over as Chief Financial Officer after Plaintiff's departure. Defendant's contention that the fact that Ms. Hodges already worked for Gulf Industries and thus her appointment to CFO does not constitute a "replacement" is inapposite.

his email did not constitute a resignation.

Nonetheless, the fact that a plaintiff tendered a letter of resignation does not end our inquiry into the possibility of discharge. "When an employee resigns, he may satisfy the discharge requirements by proving constructive discharge." *Bunge Corp.*, 207 F.3d at 782. The Fifth Circuit has stated that, in order to prove constructive discharge:

> an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign. Stated more simply, [the plaintiff's] resignation must have been reasonable under all the circumstances. Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Bunge Corp.*, 207 F.3d at 782 (citing *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).

In the case at bar, Plaintiff Schneider was demoted from CEO to CFO after Doug Brooks became the controlling shareholder in the company. However, Plaintiff admits that he, as a member of the Board of Directors, voted to make Mr. Brooks the CEO and that his own title be changed to Chief Financial Officer. Furthermore, Plaintiff admits that his salary was not reduced as a result of his

change in title. Schneider does not allege that he was reassigned to menial or degrading work, that he was reassigned to work under a younger supervisor, nor does Plaintiff alleged that he was harassed or humiliated in anyway so as to encourage his resignation[2].

Plaintiff contends that he became alarmed about his position in the company when Doug Brooks requested that materials related to the company's financial status be brought to him directly. Plaintiff also felt that he was not being given sufficient work. However, Defendant has stated and Plaintiff has acknowledged that he was expected to work on a significant lawsuit that the company was facing. (Rec. Doc. No. 35-3 at 14). These conditions do not constitute the conditions that the Fifth Circuit has previously held were sufficient to demonstrate constructive discharge.

In *Guthrie v. J.C. Penny Co., Inc.*, 803 F.2d 202, 207-08 (5th Cir. 1986), the Fifth Circuit Court found that evidence including witness testimony that the plaintiff's supervisor had strongly criticized him in front of the staff, undermining his authority; that the plaintiff was demoted; that the company had inquired repeatedly about the plaintiff's retirement plans; and that the

---

[2] Humiliation and embarrassment must be significant to support a finding of constructive termination. *See Shawgo v. Spradlin*, 701 F.2d 470, 481-82 (5 th Cir. 1983)(publicity and derogatory comments resulting from disciplinary proceedings were not constructive discharge); *Junior v. Texaco, Inc.*, 688 F.2d 377, 380 (5th Cir. 1982)(unfavorable work evaluations were not constructive discharge).

plaintiff's manager had singled him out for criticism and applied tougher standards to him than to his younger colleagues was sufficient for a reasonable jury to find the Plaintiff had been constructively discharged. *See also Stephens v. C.I.T. Group/Equipment Financing, Inc.*, 955 F.2d 1023, 1027 (5th Cir. 1992)("The combination of the demotion, the continuing limitations on his salary and responsibility, and [the employer's] re[peatedly asking him whether he was going to quit his job, could make working conditions intolerable for a reasonable person in [Plaintiff's] position."). Plaintiff does not present a genuine issue of material fact as to whether his working conditions were so intolerable so as to constitute constructive discharge. As Plaintiff cannot satisfy the constructive discharge standard, he is consequently unable to make a *prima facie* case for age discrimination.

New Orleans, Louisiana, this 2nd day of July, 2013.

_____
UNITED STATES DISTRICT JUDGE